JS-6
O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DELTA FORENSIC ENGINEERING, INC., a North Carolina Corporation | ) ) ) | Case No. 18-cv-2780 DDP (AFMx) |
| Plaintiff, | ) ) ) | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | ) ) | |
| DELTA V BIOMECHANICS, INC., a California corporation | ) ) ) | |
| Defendant. | ) ) | [Dkts. 77, 85] |

Presently before the court are the parties' cross-motions for summary judgment. (Dkts. 77, 85.) Having considered the submissions of the parties and heard oral argument, the court grants Defendant's motion, denies Plaintiff's motion, and adopts the following order.

**I. BACKGROUND**

Plaintiff Delta V Forensic Engineering, Inc. ("Plaintiff") brings this trademark infringement action against Defendant Delta V Biomechanics ("Defendant") for Defendant's use of the mark "Delta V". (*See* Dkt. 1, Compl.) Plaintiff is an accident reconstruction firm providing expert witness services related to motor vehicle analysis and reconstruction, otherwise known as forensic engineering. (Dkt. 90-5, Decl. Radwick, Exh. B (Anders Depo. at 107:18-108:3; 117:19-118:4.)) Plaintiff's services focus on vehicle accident reconstruction, including, but not limited to, retrieving data from a vehicle's event data recorder or "black box," video analysis, and providing animations and full-scale re-enactments. (Anders Depo. at 171:3-7; 242:1-25.) Plaintiff has used the "Delta V" mark since at least August 24, 2004. (Dkt. 79-3, Decl. Anders ¶ 4.) In August 2011, Plaintiff obtained federal registrations from the United States Patent and Trademark Office for "the standard character mark Delta [V]" and for the "stylized version" of the mark "consisting of the word 'DELTA' and the letter "V" in brackets . . . ." (*Id.* ¶ 2.) Plaintiff uses the "Delta V" mark on its marketing materials, including its website, and during its attendance and presentations at industry conferences and trade shows. (*Id.* ¶ 30.)

Defendant provides consulting and expert witness services in the field of biomechanics. (Dkt. 85-7, Decl. Raphael ¶ 4.) Specifically, Defendant provides "analysis and expert opinion on the medical mechanism of injury to the human body." (*Id.*) Defendant employs only one person, Dr. Elizabeth Raphael, who is "Principal Engineer and [] Medical Doctor." (*Id.* ¶ 5.) Dr. Raphael is "personally retained to provide biomechanics expert opinion and testimony in approximately 99% of [Defendant's] cases." (*Id.*) Defendant has used "Delta V" in its name since 2008. (Decl. Melisso ¶ 7.) "Delta V" appears on Defendant's name as standard text with no added stylization and no brackets. (*Id.*) Defendant does not conduct any formal marketing and obtains its clients primarily through word-of-mouth. (Decl. Melisso ¶ 6.) Defendant maintains a

website and attends industry conferences and trade shows in relation to its services. (*Id.*; Supp. Decl. Melisso ¶ 9.)

In 2011, defense in the case *Cynthia Kinney v. Mack Trucks, Inc.*, No. 3:10-cv-00431 ("*Kinney* case"), retained both Plaintiff and Defendant as expert witnesses. (Decl. Raphael ¶¶ 20-23.) For the *Kinney* case, Plaintiff's employee, Timothy Cheek, performed a black box download of a truck involved in the crash, and Defendant's CEO, Dr. Elizabeth Raphael, provided an opinion concerning the medical mechanism of an injury involved. (Yaek Decl. ¶¶ 4, 6; McDonald Decl. ¶¶ 1-2, 4; Raphael Decl. ¶¶ 20, 22-23.) During the *Kinney* case, Defendant first learned of Plaintiff's existence. (Decl. Raphael ¶ 21.) Materials in the *Kinney* case, including expert disclosures and expert reports, identified Plaintiff and Defendant by name. (*Id.* ¶ 24.) In September 2011, after defense counsel in the *Kinney* case served the expert witness disclosure, all defense experts, including Plaintiff and Defendant here, received a copy of the served expert witness disclosure. (Decl. McDonald ¶¶ 6, 7, Exh. A.) The expert disclosure identified each expert on the defense side, including Dr. Raphael and Timothy Cheek, their companies and addresses, and attached each expert's report and curriculum vitae. (*Id.* ¶ 6.) Additionally, in January 2012, defense counsel in the *Kinney* case sent Timothy Cheek a copy of Dr. Raphael's deposition in that case. (*Id.* ¶ 9.)

In August 2016, Plaintiff sent Defendant a Cease and Desist Letter demanding that Defendant cease use of the "Delta V" mark. (Decl. Anders ¶ 35; Decl. Radwick, Exh. AA.) In 2017, Plaintiff filed suit against Defendant in North Carolina. That case was dismissed for lack of personal jurisdiction. Plaintiff subsequently filed the present action alleging federal and California state trademark infringement and unfair competition claims. (*See* Compl.)

Plaintiff now moves for summary judgment on the issue of likelihood of confusion. (Dkt. 77, Plaintiff's Motion for Summary Judgment ("Plaintiff's MSJ").) Defendant moves for summary judgment on the issues of likelihood of confusion, laches,

3

willfulness, and damages. (Dkt. 85, Defendant's Motion for Summary Judgment ("Defendant's MSJ").)

///

///

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational

4

trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.*

## III. DISCUSSION

### A. Likelihood of Confusion

To establish a claim for trademark infringement, a plaintiff must demonstrate (1) an ownership interest in a mark,[1] and (2) that the defendant's use of the mark is likely to cause consumer confusion. *Dep't of Parks and Recreation v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999). Likelihood of confusion is evaluated using the following, non-exhaustive, eight factors: "(1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion" (collectively, "*Sleekcraft* factors"). *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979));

---

[1] The parties do not dispute Plaintiff's ownership interest in the "Delta V" mark. (*See* Plaintiff's MSJ at 3; Defendant's MSJ at 9-10.)

5

*Sleekcraft*, 599 F.2d at 348 n.11 ("The list is not exhaustive[,] [o]ther variables may come into play depending on the particular facts presented."). The *Sleekcraft* factors are a "guide" to determine whether consumer confusion is likely and are not to be applied "mechanically." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). "The factors, not surprisingly, tend to overlap, and interact, and the resolution of one factor will likely influence the outcome and relative importance of other factors." *Id.*

The court holds that no reasonable jury could find that Defendant's use of the "Delta V" mark is likely to cause consumer confusion. First, and the most significant factor here, the type of services and degree of care factor weighs heavily against likelihood of confusion because Plaintiff and Defendant offer expensive expert witness services to attorneys. Sophisticated consumers and consumers purchasing expensive services are more discerning and less easily confused. *Pom Wonderful*, 775 F.3d at 1127. Defendant's biomechanics expert bills at an hourly rate of $600 and bills on average $80,000 to $150,000 per job. Plaintiff's principal engineer bills at an hourly rate of $330 and bills on average $8,000 per job. Both companies' services are expensive. It is also worth noting that Plaintiff's average of $8,000 per job, is ten times less than the bottom of the range of Defendant's per job price. Further, the undisputed evidence is that attorneys hire Defendant's biomechanics expert, Dr. Raphael, based on credentials, experience, past performance, and reputation by individual name, rather than by company name. (Decl. Raphael ¶ 15.)

While Plaintiff presents a declaration from its CEO declaring that when an attorney contacts Plaintiff, "the attorney is assigned to an expert based on availability[,] . . . [and that] [t]he attorney hires [Plaintiff], not a particular expert" (Dkt. 94-1, Decl. Anders ¶ 31), this evidence is insufficient to create a genuine material dispute given the nature of the services involved. The parties' services are offered in the context of litigation, often involving personal injuries. These injuries can range from relatively minor to matters involving death or great bodily injury. Attorneys recognize that cases

often succeed or fail based upon the quality of experts that they retain. Attorneys also recognize that they have a duty to spend client funds wisely and effectively. Therefore, attorneys, and the court recognizes that generalities are imperfect, use a high degree of care when deciding who to hire as an expert witness. Attorneys will typically vet and seek opinions from other attorneys concerning who to hire as an expert. Indeed, an attorney could face claims of professional negligence for hiring a poorly qualified expert.

Given the sophistication of the consumer, expense of the services, and the fact that Defendant is, in effect, a single individual, the court finds that attorneys hire Dr. Raphael because of her individual reputation in the legal community as an expert, rather than by the company name. Therefore, the likelihood of confusion seems particularly remote given the unique circumstances of this case. *See M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1084 (9th Cir. 2005) (holding that the possibility of confusion "almost nil" where purchasers of record labels and music management databases were highly sophisticated, and regardless of any trademark, would be "well informed about the nature of the database . . . before making a purchasing decision."). Consequently, the type of services and degree of care factor weighs heavily, if not overwhelmingly, against likelihood of confusion. *See Entrepreneur Media*, 279 F.3d at 1141 ("The factors, not surprisingly, tend to overlap, and interact, and the resolution of one factor will likely influence the outcome and relative importance of other factors.").

The strength of the mark weighs against likelihood of confusion. To determine the strength of the "Delta V" mark, it must be placed on the conceptual distinctiveness spectrum. *See Pom Wonderful*, 775 F.3d at 1126. The most distinctive marks, arbitrary and fanciful marks, receive the most trademark protection, whereas generic marks receive the least protection. *Id.* "Suggestive and descriptive marks lie between these two extremes, with suggestive marks being entitled to greater protection than descriptive marks." *Id.* "A suggestive mark is one for which a consumer must use imagination or any type of multistage reasoning to understand the mark's significance . . . ." *Entrepreneur Media*, 279

7

F.3d at 1142 (citations and quotations omitted). Here, "Delta V" is a shorthand reference to the physics concept that means "change in velocity"—a factor in analyzing and reconstructing motor vehicle accidents. (Decl. Radwick ¶ 4; Decl. Radwick, Ex. C (Anders Depo at 276:2-3, 11-13; 294:10-15)). Thus, the "Delta V" mark is suggestive because it refers to an aspect of Plaintiff's work.

Plaintiff argues that the "Delta V" mark has gained commercial strength.[2] (Plaintiff's MSJ at 6-7.) While suggestive marks are "presumptively weak," they "may be strengthened by such factors as extensive advertising, length of exclusive use, [and] public recognition." *Pom Wonderful*, 775 F.3d at 1126 (citations omitted). The undisputed evidence is that Plaintiff has not had exclusive use of the "Delta V" mark for about ten years. Plaintiff and Defendant have used the mark concurrently since 2008. As to its advertising and public recognition, Plaintiff has not connected its expenditures with evidence of effectiveness, in other words, evidence that consumers associate "Delta V" with Plaintiff. While survey type evidence is not a requirement, the court here has no ability to evaluate the effectiveness of the advertising.[3] Further, Plaintiff's marketing

---

[2] Plaintiff appears to argue that its mark is strong because its registration has become incontestable. (Plaintiff's MSJ at 4-5.) Incontestable status, however, "does *not* require a finding that the mark is strong." *Entrepreneur Media*, 279 F.3d at 1142 n.3 (emphasis in original). Rather, the likelihood of confusion analysis requires the court to consider the conceptual strength to determine whether a *consumer* is likely to be confused. *Id*. Whether the "Delta V" mark has acquired secondary meaning is not at issue here. *See* 15 U.S.C. § 1115(b) ("To the extent that the right to use the registered mark has become incontestable . . . the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark . . . Such conclusive evidence of the right to use the registered mark shall be subject to proof of infringement . . . .").

[3] For example, in general, a party attempting to demonstrate the effectiveness of its advertisements could present a combination of sales figure increases by year, increases of visitors to its website, magazines or related awards recognizing percent of services or goods sold compared to competitors. *See SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd*, 846 F. Supp. 2d 1063, 1069 (N.D. Cal. 2012). Evidence that the best-known consumers utilize a party's services in the relevant industry, in addition to evidence of volume of

8

expenditures, as set forth in the under-seal filing, are not substantial considering the fifteen years it has used the mark and the approximately ten years of concurrent use. *See Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. 1989) (holding that plaintiff's advertising and sales were insufficient to demonstrate strength "because of the parties' concurrent use of that term as a trademark.").

The court recognizes that each dispute presents unique facts and circumstances. The court notes however, that Plaintiff's evidence is significantly less than that in *Entrepreneur Media*. In *Entrepreneur Media*, the Ninth Circuit concluded that evidence of use of a mark on a magazine for over twenty years, and over half million copies of the magazine sold monthly to over two million readers was insufficient to demonstrate that a descriptive mark was strengthened as a matter of law. *Entrepreneur Media*, 279 F.3d at 1144. Reviewing the evidence in the light most favorable to Plaintiff, the court concludes that Plaintiff's evidence is insufficient to create a material dispute as to the mark's strength and no reasonable jury could find that the "Delta V" mark has been strengthened. Thus, the strength of the mark is weak and weighs against likelihood of confusion.

Next, the similarity of the marks factor is neutral. "The following axioms define and delimit the similarity analysis: (1) similarity is best evaluated by appearance, sound, and meaning; (2) marks should be considered in their entirety and as they appear in the marketplace; and (3) similarities weigh more heavily than differences." *Pom Wonderful*, 775 F.3d at 1127-28 (citing *Entrepreneur Media*, 279 F.3d at 1144). Of importance here, commonly used words generally do not make two marks similar where they appear with distinguishing words. *See Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1052 (C.D. Cal. 2013) ("Multiple courts have found that the presence of a common word

---

services provided, may also be sufficient. *See Mortgage Electronic Registration Systems, Inc. v. Brosnan*, No. C 09-3600 SBA, 2009 WL 3647125, at *5 (Sept. 4, 2009).

9

does not render two marks similar where additional words make the marks distinctive."). Plaintiff and Defendant use an identical, prominent portion of the mark, "Delta V." Differences in font, color, and capitalization are not significant. However, "Delta V" is a commonly used physics term (Anders Depo at 276:2-3, 11-13), and the marks appear in the marketplace with distinguishing phrases, also referred to as "taglines." Plaintiff's website has the tagline "Forensic Engineering," and Defendant's website has the tagline "Expertise in Medicine and Engineering." These taglines also appear on the parties' letterheads and business cards. As to sound, "Delta V Biomechanics" is phonetically different. "Delta V Biomechanics" also has a different meaning from "Delta V Forensic Engineering." Considering that the marks have an identical prominent portion, the distinguishing taglines appearing with the marks in the marketplace, and in light of the degree of care exercised by attorneys encountering the marks, the similarity of marks factor is neutral.

The proximity and relatedness of the services factor is similarly neutral. "Related goods (or services) are those which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Pom Wonderful*, 775 F.3d at 1127 (citations and quotations omitted)). The undisputed evidence is that Defendant only provides biomechanical services—services related to the medical facts of injury to the human body. (Melisso Depo. at 148:9-17.) Plaintiff's services on the other hand, relate to movement and forces of the vehicles involved in accidents. However, both parties offer expert witness services to the same class of consumer—attorneys representing parties in automobile accident litigation. While an attorney may reasonably believe that experts in biomechanics and in forensic engineering could work for the same entity, the degree of care and sophistication of attorneys hiring expert witnesses diminishes the significance of the relatedness of the services. Therefore, the proximity of the services factor is neutral.

The marketing channels factor weighs slightly in favor of likelihood of confusion. "Marketing channels can converge even when different submarkets are involved so long as the general class of . . . purchasers exposed to the products overlap." *Pom Wonderful*, 775 F.3d at 1130 (citations and quotations omitted). The undisputed evidence is that Defendant does not conduct any formal marketing. However, it is also undisputed that both parties attend trade shows, both advertise by word-of-mouth, and both parties have active websites. While it is not clear whether the parties' attend tradeshows in the same regions, exposing the parties to the same general class of consumers, attorneys may be exposed to both parties via their websites. Therefore, the factor of marketing channels used weighs slightly in favor of likelihood of confusion.

The actual confusion factor is neutral. Plaintiff argues that there have been seven documented instances of confusion: A Federal Express package delivered for Dr. Raphael to Plaintiff's address, a conference attendee believing Plaintiff's employee was employed by Defendant, a client of Plaintiff's believing Dr. Raphael was an employee of Plaintiff's, two misdirected checks, enquiries to Plaintiff's employees at industry conferences, and a mistaken congratulatory message to Plaintiff's employee believing that the employee worked for Defendant. (Plaintiff's MSJ at 14-17.) Plaintiff argues that these instances are evidence of actual confusion and diminish the significance of the factor regarding the sophistication of the consumer and degree of care exercised. (*Id.*)

"Evidence of actual confusion is strong evidence that future confusion is likely…" *Entrepreneur*, 279 F.3d at 115. "[W]hile enquiry evidence is admissible and relevant, standing alone with no other evidence it is insufficient proof of actual confusion." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 n.7 (9th Cir. 2002). Additionally, "misdirected communications" are generally not evidence of actual confusion. *See Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1139-40 (C.D. Cal. 2009) ("[T]elephone calls and Western Union payments apparently intended for Defendants are more properly characterized as 'misdirected communications' than evidence of actual confusion.").

11

While evidence of actual confusion is important, "[b]ecause evidence of actual confusion can be difficult to obtain, its absence is 'generally unnoteworthy' and is given little probative weight." *Cohn*, 281 F.3d at 842 (quoting *Brookfield Communications*, 174 F.3d at 1050.)

Assuming, without deciding, that Plaintiff's evidence is admissible, the court concludes that the evidence is not of actual consumer confusion, but rather, instances of stand-alone enquiries and misdirected communications. Defendant has provided a declaration from the sender of the FedEx package that explains the package was misaddressed due to a clerical error. (Decl. Deener ¶ 9.) Further, Plaintiff failed to preserve the purportedly misdirected checks leaving insufficient evidence to evaluate the significance of these mailings. Taken together, the Federal Express package and the purported misdirected checks are no more than misdirected communications unrelated to actual confusion. As to the enquiries to Plaintiff's employees, standing alone, this evidence is de minimus and the disputed facts related to these enquiries are not material to the weight of this factor. Therefore, the actual confusion factor is neutral.

Next, there is evidence in the record of Plaintiff's likelihood of expansion into the area of biomechanics. Plaintiff hired two experts qualified to provide expert witness services in biomechanics and Plaintiff has begun to offer expert services in that area. Taking this evidence in the light most favorable to Plaintiff, the factor of likelihood of expansion weighs slightly in favor of likelihood of confusion, but not significantly given the level of sophistication and degree of care exercised by attorneys.

Lastly, the intent factor is neutral because there is no evidence of bad intent.

Although two factors here raise the possibility of likelihood of confusion, the court concludes that, taken together, no reasonable jury could find that likelihood of confusion is probable. *See Cohn*, 281 F.3d at 842 (explaining that a genuine issue is created by demonstrating that confusion is "probable, not simply a possibility" (citations omitted)).

12

The court grants summary judgment to Defendant on the issue of likelihood of confusion.

### B. Laches

Even if there were a triable issue fact on likelihood of confusion, the court finds that the equitable doctrine of laches bars Plaintiff's claims. "Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (citations and quotations omitted). "To establish that laches bars a claim, a defendant must 'prove both an unreasonable delay by the plaintiff and prejudice to itself.'" *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1116 (9th Cir. 2018) (quoting *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012). The length of the delay is measured by "when the plaintiff knew (or should have known) of the allegedly infringing conduct," and stops "when the lawsuit in which the defendant seeks to invoke the laches defense is initiated." *Eat Right Foods*, 880 F.3d at 1116 (internal citations and quotations omitted.) "Although laches is distinct from a statute of limitation, [courts] make laches determinations 'with reference to the limitations period for the analogous action at law.'" *Id.* (quoting *Jarrow Formulas*, 304 F.3d at 835-36). "If the plaintiff filed within that period, there is a strong presumption against laches. If the plaintiff filed outside that period, the presumption is reversed." *Eat Right Foods*, 880 F.3d at 1116 (quoting *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006)). A party against whom laches is sought may rebut the presumption that laches applies if it can show "that its delay in suing was nonetheless reasonable." *Eat Right Foods*, 880 F.3d at 1116.

The most analogous statute of limitation here is California's four-year statute of limitation for trademark infringement actions. *See Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018). Accordingly, if Plaintiff filed suit, or took other action to enforce its trademark, within four years of having knowledge or

constructive knowledge of the infringing activity, there is a presumption against laches. *See Eat Right Foods*, 880 F.3d at 1116. If Plaintiff filed outside of the four-year period, the presumption is reversed. *Id.* The undisputed evidence is that Plaintiff received Dr. Raphael's deposition, identifying Defendant by its name, "Delta V Biomechanics," in January 2012. (Decl. Radwick ¶ 12; Decl. McDonald ¶¶ 3-4, 9.) Although Plaintiff may not have read the material, possession of material that contains the allegedly infringing mark is sufficient for constructive knowledge. *See Evergreen Safety Council*, 697 F.3d at 1227 (holding that "[t]he fact that [Plaintiff] had the Evergreen draft manual in his possession in 1999, regardless of whether he actually read it, demonstrates that he should have known of the infringement . . . [Plaintiff] cannot rely on the fact that he allegedly did not open the Letter containing the draft manual until nearly twelve years later.").[4] The doctrine of constructive knowledge seems particularly apt here. In the context of litigation, it is significant that Plaintiff should be deemed to have constructive knowledge of the name used by a co-expert on the same side of the lawsuit. It is self-evident that experts should be aware of the scope of services of co-experts involved in the same litigation. It is common for experts to be cross-examined concerning the opinions of other experts, including those on the same side. Therefore, Plaintiff had constructive knowledge of Defendant's use of the "Delta V" mark in January 2012. Plaintiff did not file suit until 2017—five years after it had constructive knowledge. Thus, there is a strong presumption that laches bars Plaintiff's claims.

---

[4] Plaintiff argues that laches does bar its action because "[i]n order to be successfully asserted, a defendant must prove that the 'plaintiff' had 'full knowledge of the facts' and yet slept on its rights." (Dkt. 108, Reply at 12:12-14.) Plaintiff's statement of the law is incomplete. The case Plaintiff's cites, *Danjaq LLC v. Sony Corp.*, also states that "the relevant time period is the period from when the plaintiff knew (or *should have known*) of the allegedly infringing conduct . . . ." 263 F.3d 942, 950 (9th Cir. 2001) (emphasis added). Actual knowledge is not required.

"Two types of prejudice can give rise to laches: expectations-based prejudice and evidentiary prejudice." *Eat Right Foods*, 880 F.3d at 1119. Here, Defendant has demonstrated evidentiary prejudice. Evidence has been lost or degraded due to Plaintiff's delay. Defendant does not have the ability to inspect the purported misdirected checks because Plaintiff did not preserve them. Defendant cannot contact the senders of the checks or the individuals who made allegedly made enquires to Plaintiff's employees, and witnesses have forgotten important information necessary to determine Plaintiff's participation in an expert witness conference call during the *Kinney* case.

The court concludes that Plaintiff unreasonably delayed in bringing this action and Defendant has been prejudiced by the loss of evidence. Therefore, the court grants summary judgment on the defense of laches and does not reach Defendant's alternative grounds for summary judgment.

**IV. CONCLUSION**

For the reasons stated above, the court grants Defendant's motion for summary judgment and denies Plaintiff's motion.

**IT IS SO ORDERED.**

Dated: August 23, 2019

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE

15