O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DELTA FORENSIC ENGINEERING, INC., a North Carolina Corporation | ) ) ) | Case No.  18-cv-2780 DDP (AFMx) |
| Plaintiff, | ) ) ) ) | **ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND NONTAXABLE COSTS, DENYING PLAINTIFF'S EX-PARTE APPLICATION TO STRIKE, AND GRANTING DEFENDANT'S MOTION TO RE-TAX COSTS** |
| v. | ) ) ) ) | |
| DELTA V BIOMECHANICS, INC., a California corporation | ) ) ) | |
| Defendant. | ) ) ) | [Dkts. 134, 135, 137, 153, 166.] |

Presently before the court are Defendant and Counter-claimant Delta V Biomechanics, Inc. ("Defendant")'s Notice of Lodging Proposed Order Dismissing Counterclaims without Prejudice and Proposed Judgment, (dkt. 134), Motion for Attorneys' fees and Nontaxable Costs, (dkt. 135), Plaintiff and Counter-Defendant's Delta V Forensic Engineering, Inc. ("Plaintiff")'s Ex-Parte Application to Strike Defendant's Notice of Lodging Proposed Judgment, (dkt. 137), and Defendant's Motion to Re-Tax Costs against All Plaintiffs, (dkt. 166).  Having considered the submissions of the parties

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and heard oral argument,[1] the court approves Defendant's Proposed Judgment, denies Defendant's Motion for Attorneys' fees and Nontaxable Costs, denies Plaintiff's Ex-parte Application to Strike the Proposed Judgment, grants Defendant's Motion to Re-Tax Costs, and adopts the following order.

**I. BACKGROUND**

The court assumes the parties' familiarity with the factual background of this case, which has been set forth in greater detail in the court's summary judgment Order. (Dkt. 128.) In brief, Plaintiff is an accident reconstruction firm providing expert witness in the field of forensic engineering. (Dkt. 90-5, Decl. Radwick, Ex. B (Anders Depo. at 107:18-108:3; 117:19-118:4.)) Defendant provides consulting and expert witness services in the field of biomechanics. (Dkt. 85-7, Decl. Raphael ¶ 4.) Plaintiff filed this trademark infringement action against Defendant for Defendant's use of the mark "Delta V". (*See* Dkt. 1, Compl.) Defendant denied liability and asserted counterclaims for (1) cancellation of marks due to abandonment; (2) declaratory judgment of prior use; (3) declaratory judgment of non-infringement under the Lanham Act; and (4)-(5) declaratory judgment of no unfair competition under the Lanham Act and under California law. (Dkt. 29.)

After the close of discovery, the parties filed cross-motions for summary judgment. (Dkts. 77, 85.) On August 23, 2019, the court granted Defendant's motion for summary judgment on the issues of likelihood of confusion and laches and denied Plaintiff's motion. (Dkt. 128.) The court's order did not address or otherwise dismiss Defendant's counterclaims because neither party moved for summary judgment as to the counterclaims. (*See id.*) In error, the court administratively closed the case on August 23,

---

[1] The parties' Joint Request for Hearing, dkt. 153, is granted. The court heard oral argument for dkts. 134, 135, and 137 on August 17, 2020. (*See* dkt. 159.) The court finds dkt. 166 suitable for decision without oral argument.

2019 thereby vacating the pre-trial conference and trial dates.  The court did not issue final judgment in a separate document.

On March 18, 2020, Defendant filed a Proposed Judgment and Request for Dismissal of Counterclaims, and the present Motion for Attorneys' fees and Nontaxable Costs.  (Dkts. 134, 135 ("Mot.").)  Defendant seeks attorneys' fees in the amount of $849,902.45, and nontaxable costs in the amount of $9,058.03.  (*See* Mot.)  On March 20, 2020, Plaintiff filed an ex-parte application to strike the proposed judgment, strike the proposed order for dismissal of counterclaims without prejudice and bifurcate the timeliness issue from the merits issue for motion for attorneys' fees and application to tax costs.  (Dkts. 137, 138.)  Plaintiff contends that Defendant's Motion for Attorneys' fees is untimely and that in any event, the motion fails on the merits.  The court begins by addressing the timeliness issue below.

**II. LEGAL STANDARD**

The Lanham Act permits courts to award reasonable attorneys' fees in trademark cases only in "exceptional cases." 15 U.S.C. § 1117(a).  Historically, a case was considered exceptional only when a plaintiff had shown that a defendant had engaged in "malicious, fraudulent, deliberate or willful" infringement.  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993).  In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), however, the Supreme Court held that an analogous standard under the Patent Act was "unduly rigid and impermissibly encumber[ed] the statutory grant of discretion to district courts."  *Id.* at 1755.  Instead, the Court explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Id.* at 1756.  Since *Octane Fitness*, the Ninth Circuit has clarified that "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional."  *SunEarth, Inc. v. Sun Earth Solar*

*Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (quoting *Octane Fitness*, 134 S. Ct. at 1756). Under the "totality of the circumstances" approach, district courts may consider a "'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness*, 134 S. Ct. at 1756 n.6 (quoting *Fogerty v. Fantasy Inc.*, 510 U.S. 517, 534 n.19 (1994)). The exceptional case standard applies equally to prevailing plaintiffs and prevailing defendants. *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000). The burden of proof for establishing an entitlement to fees is preponderance of the evidence. *Id.* at 1758.

In addition, under a district court's inherent powers, a district court may "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). "[O]ne permissible sanction is an assessment of attorney's fees . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Id.* (internal quotations omitted). However, a "court can shift only those attorney's fees incurred because of the misconduct at issue." *Id.* The causal connection required is a "but-for test: The complaining party may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)).

## III. DISCUSSION

### A. Timeliness

As an initial matter, Plaintiff disputes the timeliness of Defendant's motion for fees. Plaintiff makes several arguments in support of its position that the motion for fees is untimely. First, according to Plaintiff, the court's order granting summary judgment on August 23, 2019 ("MSJ Order") was "unambiguously final, and the parties treated it as such: it was entered with the label 'Case Terminated' . . . ." (Dkt. 147, Opp. at 6-7.) Plaintiff argues that Defendant's conduct of not making any pretrial filings, not

4

appearing for a final pretrial conference or trial, and not taking any other action, demonstrates the parties' belief that the MSJ Order was a final order disposing of the case.  (*Id.* at 7-8.)  Plaintiff further asserts that Defendant cannot "resurrect" the action by lodging a proposed order dismissing the counterclaims and a proposed judgment.  (*See* Dkt. 134 (Notice of Lodging Proposed Order Dismissing Delta V Biomechanics, Inc.'s Counterclaims without Prejudice and Proposed Judgment).)  Second, Plaintiff contends that Defendant has waived its right to claim that the MSJ Order was not a final order. Third, Plaintiff argues if a separate judgment was not waived, under Rule 58(c), judgment was deemed entered 150 days after the MSJ Order.  (*Id.* at 8-9.)

A motion for attorneys' fees and costs must be filed "no later than 14 days after the entry of judgment," unless a statute or court order provides otherwise.  Fed. R. Civ. P. 54(d)(2).  Under Local Rules, a motion for attorneys' fees must be filed "within fourteen [] days after the entry of judgment or other final order, unless otherwise ordered by the Court."  C.D. Cal. L.R. 54-7, 54-8.  As to entry of judgment, Federal Rule of Civil Procedure 58 provides that "[e]very judgment . . . must be set out in a separate document," and "judgment is entered . . . when the judgment is entered in the civil docket . . . and the earlier of these events occurs: (A) it is set out in a separate document; or (B) 150 days have run from the entry in the civil docket."  Fed. R. Civ. P. 58(a), (c)(2)(A-B).  Importantly, Local Rule 58-6 provides that in the Central District a "[n]otation in the civil docket of entry of a memorandum of decision, an opinion of the Court, or a minute order of the Clerk *shall not* constitute entry of judgment pursuant to Fed. R. Civ. Proc. 58 and 79(a) unless specifically ordered by the judge."  C.D. Cal. L.R. 58-6 (emphasis added).

For purposes of appellate jurisdiction, where judgment has not been set forth in a separate document under Rule 58, the Ninth Circuit will look to whether the ruling "(1) is a full adjudication of the issues, and (2) clearly evidences the judge's intention that it be the court's final act in the matter."  *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1258 (9th Cir.

2004) (quoting *Nat'l Distrib. Agency v. Nationwide Mut. Ins. Co.*, 117 F.3d 432, 433 (9th Cir. 1997)).  The court will also consider whether the parties' conduct demonstrates the belief that a final judgment has been entered thereby waiving Rule 58's separate judgment requirement.  *See Casey*, 362 F.3d at 1258-59; *Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978).

Plaintiff does not dispute that the court has not issued a separate judgment in this action.  Thus, the issue is whether the court's MSJ Order was a final order and whether the parties' conduct indicates that the parties unequivocally believed the MSJ Order served as a judgment.  *See Casey*, 362 F.3d at 1258-59.  Plaintiff first appears to contend that the MSJ Order, although it did not address the counterclaims, should be treated as a final order because the court administratively closed the case.  However, the court's administrative closure, by itself, is not significant in determining whether the order adjudicated all issues leaving nothing left for the court to do.  *Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[a]n order administratively closing a case is a docket management tool that has no jurisdictional effect.").  Moreover, it is undeniable that the MSJ Order did not adjudicate Defendant's counterclaims including, of particular significance, Defendant's counterclaim for cancellation of Plaintiff's marks.  Defendant's counterclaims remained pending before the court despite the court's administrative closure.  (*See* Dkt. 128.)  Further, Plaintiff could not have reasonably relied on the administrative closure in believing that the order was final.  *See* Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").  Having knowledge of the pending counterclaims, Plaintiff could have sought clarification, sought final judgment in a separate document, or filed a motion for involuntary dismissal of the counterclaims under Rule 41(b).  As Plaintiff notes, "if the judge does nothing further in

6

the case for 150 days, then it should occur to even the most inattentive of appellate counsel that it is time either to seek clarification from the judge or to file an appeal." (Opp. at 9 (quoting *Orr v. Plumb*, 884 F. 3d 923, 931 (9th Cir. 2018)).

There is also no basis to conclude that Defendant's conduct demonstrates an unequivocal belief that the MSJ Order was a final judgment. The court's administrative closure vacated the pre-trial conference and trial dates. There were no deadlines or hearings scheduled that Defendant failed to adhere to. As discussed above, knowing that there were pending counterclaims, Plaintiff could have sought clarification from the court when the pre-trial and trial dates were vacated. Plaintiff relies on inapposite cases to argue that Defendant should be deemed to have abandoned its counterclaims and waived the separate document requirement. *See Casey*, 362 F.3d at 1259 (Plaintiff waived separate judgment requirement when Plaintiff "unequivocally indicated her belief that the. . . summary judgment minute order served as a judgment by filing a Rule 60(b) motion."); *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (claims deemed abandoned when not raised in opposition to a motion for summary judgment); *see also Bankers Trust*, 435 U.S. at 387-88 (holding that where the district court evidenced clear intent that its order represented the final decision in the case, a judgment of dismissal was entered by the clerk, and the parties did not object to the separate judgment requirement on appeal, "the parties should be deemed to have waived the separate-judgment requirement of Rule 58"). Here, Defendant did not file any motion or document indicating that it considered the court's MSJ Order as final, did not fail to oppose a motion for summary judgment or dismissal of its counterclaims, did not fail to object to the separate judgment, and did not fail to meet deadlines or fail to appear to any hearing.

Similarly, Plaintiff's contention that judgment was deemed entered 150 days from the MSJ Order is misplaced for two reasons. First, Federal Rule 58 must be read together with Local Rule 58-6. Under Federal Rule of Civil Procedure 58, "judgment is entered . . .

when the judgment is entered in the civil docket . . . and the earlier of these events occurs: (A) it is set out in a separate document; or (B) 150 days have run from the entry in the civil docket."  Fed. R. Civ. P. 58(a), (c).  However, Local Rule 58-6 provides that a "[n]otation in the civil docket of entry of a memorandum of decision, an opinion of the Court, or a minute order of the Clerk *shall not* constitute entry of judgment pursuant to Fed. R. Civ. Proc. 58 and 79(a) unless specifically ordered by the judge."  L.R. 58-6 (emphasis added).  The court did not order for the opinion of the court to be an entry of judgment.  Nor could it.  As discussed above, Defendant's counterclaims remained unaddressed and pending before the court.  Second, *Orr v. Plumb*, a case on which Plaintiff relies for application of the 150-day rule, is distinguishable from the situation at bar.  884 F.3d 923 (9th Cir. 2018).  There, the Ninth Circuit concluded that the 150-day applied where there was no separate judgment and where a special verdict was a "full adjudication of the issues" leaving "nothing further for the court to do . . . ."  *Id.* at 928-29. Unlike *Orr*, the MSJ Order was not a full adjudication of the issues; Defendant's counterclaims remained pending before the court.  The 150-day rule set forth in Rule 58(c) is inapplicable under the circumstances here.

For the reasons set forth above, Defendant's motion for fees is timely.[2] [3]

///

///

///

///

_____

[2] Plaintiff also appears to argue that the time for it to appeal has run.  Because the court concludes that judgment was not entered by virtue of the MSJ Order or the 150-day rule, Plaintiff's time for appeal has not run.

[3] Having concluded that Defendant's motion for fees is timely, the court reverses the clerk's denial of Defendant's Application to Tax Costs, Dkt. 162.  The Clerk shall proceed to decide the Application on its merits.  *See* Order Granting Defendant and Counterclaimant Delta V Biomechanics Inc.'s Motion to Re-tax Costs.

## B.  Fees under the Lanham Act

### 1.  *Reasonableness of Plaintiff's Claims*

Defendant asserts that this case is exceptional because Plaintiff's claims were baseless from the outset.  Defendant asserts that it was evident from the beginning that the relevant consumers are highly sophisticated making the likelihood of confusion "almost nil," Plaintiff was not aware of any confusion prior to July 2016, and there was never any evidence of willfulness or evidence of any damages.  (Mot. at 18-21 (quoting *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1084 (9th Cir. 2005).)  In short, Defendant asserts that this was never a "close case" and as such, Plaintiff's claims were objectively baseless.  (*Id.* at 21.)

The court disagrees.  The issue of likelihood of confusion requires an evaluation of a non-exhaustive list of factors. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) (likelihood of confusion is evaluated using the following, non-exhaustive, factors: "(1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion" (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).  And here, Plaintiff raised debatable issues of fact and law for various factors.  For instance, although Plaintiff's mark is weak, the parties use a similar name and provide services in similar fields.  Plaintiff professed the desire to expand to Defendant's field of biomechanics indicating likelihood of service expansion. Plaintiff also argued that despite the sophistication of consumers, consumers could be confused regarding the parties' affiliation.  In support of its argument, Plaintiff put forth

1  relevant facts[4] and relied on relevant law.  Specifically, Plaintiff relied on *Morningside*
2  *Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 141-43 (2d Cir. 1999), a
3  Second Circuit case which held that confusion as to "sponsorship and affiliation"
4  between "two similarly named companies" is relevant to the likelihood of confusion
5  inquiry.  The court here rejected Plaintiff's position because the court concluded that
6  there was no evidence of confusion regarding affiliation and confusion as to affiliation
7  was unlikely.  Nonetheless, the issue was sufficiently debatable for Plaintiff to raise the
8  argument.

9          Similarly, Plaintiff relied on relevant law to argue actual confusion at summary
10  judgment.[5]  The court's conclusion that Plaintiff's evidence of actual confusion was no
11  more than stand-alone enquiries and misdirected communications was not obvious from
12  the outset.  In any event, the absence of actual confusion does not make Plaintiff's claim
13  of infringement objectively unreasonable.  While evidence of actual confusion is
14  important, "[b]ecause evidence of actual confusion can be difficult to obtain, its absence
15  is 'generally unnoteworthy' and is given little probative weight."  *Cohn v. Petsmart, Inc.*,
16  281 F.3d 837, 842 (9th Cir. 2002) (quoting *Brookfield Commc'ns, Inc. v. W. Coast Entm't*
17  *Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999)).

18          Fellow district courts in this Circuit have concluded that "[i]f a plaintiff has raised
19  'debatable issues' and can be found to have had a legitimate reason for bringing the

---

[4] Defendant notes that Plaintiff failed to conduct a survey and did not designate any experts.  Although there is not a hard and fast rule requiring such evidence, and the lack of such evidence here is worthy of mention, the court still finds that such lack of evidence, given the totality of the factors the court considered herein, does not tip the balance in favor of attorneys' fees.

[5] For similar reasons, Plaintiff's request for injunctive relief was not objectively unreasonable.  *Talking Rain Beverage Co., Inc. v. DS Servs. of Am., Inc.*, No. C15-1804RSM, 2016 WL 10679357, at *10 (W.D. Wash. Feb. 12, 2016) (collecting cases) ("[O]ne way to show a likelihood of future irreparable harm is to show that there has, to date, been some actual confusion or harm.").

lawsuit, it supports a finding that a case is not exceptional." *Caiz v. Roberts*, No. CV 15–09044 RSWL (AGRx), 2017 WL 830386, at *4 (C.D. Cal. Mar. 2, 2017) (citing *Nutrivita Laboratories, Inc. v. VBS Distribution Inc.*, 160 F. Supp. 3d 1184, 1192 (C.D. Cal. 2016)).  As discussed above, Plaintiff raised debatable issues of likelihood of confusion.  The court also notes that trademark law invites wasteful disputes because it may provide protection even for weak marks.  There is just no easy way around that reality.  Therefore, although Plaintiff's mark is weak, Plaintiff was not out of bounds in attempting to police its rights.  Had Plaintiff not attempted to do so, it would have risked losing its rights against future competitors.  Plaintiff had a debatable reason for bringing this lawsuit.

### 2.  *Plaintiff's Litigation Conduct*

Defendant asserts that it is also entitled to attorneys' fees because Plaintiff "litigated this case in an unreasonable and bad faith manner." (Mot. at 15.)  Defendant contends that Plaintiff's bad faith is evidenced, in part, by the following: Plaintiff's strategy to "lie in wait" until the fifth-year anniversary of its trademark registration; Plaintiff's false claim in the cease and desist letter that its trademark was incontestable; Defendant had to engage in months of meet and confers to obtain responsive documents, in particular, the FedEx package which Plaintiff asserted was evidence of actual confusion; Plaintiff's deficient initial disclosures and supplemental disclosures; Plaintiff's false statements and misrepresentations; and Plaintiff's spoliation of evidence.

Reviewing the litigation history of the case, the court concludes that while Plaintiff's conduct is troubling, and substantially less than ideal, the conduct does not make this case exceptional.  First, there is insufficient evidence to conclude that Plaintiff's strategy was to "lie in wait" or that Plaintiff acted in bad faith when it sent the cease and desist letter.  The 2014 email does not clearly inform Plaintiff of Defendant's use of the "Delta V" mark.  Arguably, however, Plaintiff should have investigated further after receiving the email.  (*See* Dkt. 135-3, Radwick Decl., Ex. H ("About to see Elizabeth

Raphael speak at DRI" and "You're probably scratching your head . . . [t]he [conference] materials indicate Dr. Raphael is with Delta v in Charlotte, but *they clarified it is a mistake in the program*." (emphasis added)).  Similarly, Plaintiff's involvement in the *Kinney* case, sufficient to find that Plaintiff had constructive knowledge of Defendant's use of the "Delta V" mark, was insufficient for the court to find that Plaintiff had *actual* knowledge. Further, Plaintiff's claim of incontestability appears to have been the result of an oversight and is insufficient to establish bad faith.  (*See* Dkt. 147-36, Gromlovits Decl. ¶ 5 ("when the letter was written, we thought the registrations were incontestable because all of the prerequisites to incontestability, other than the formality of filing in the Patent and Trademark Office, had been achieved.").)

Second, Plaintiff's conduct regarding the FedEx package was troubling and unprofessional.  The court finds that the attorneys had a duty to make a good faith effort to locate the sender and to deliver the misaddressed package to Defendant in a timely manner.  Instead, Plaintiff's counsel retained the FedEx package for approximately two years before providing it to Defendant, late in discovery.  The court expects more from professionals.  However improper, Plaintiff's conduct did not preclude Defendant from ultimately locating the sender and investigating the misaddressed package.  Plaintiff attached images of the front and back of the package which included the name of the sender to the initial complaint filed in North Carolina.  (Dkt. 135-3, Radwick Decl., Exs. L, M.)  Defendant could have investigated the package at that early stage and, in any event, Plaintiff's ultimate production of the package occurred before the end of discovery. Therefore, Defendant was able to investigate and address the significance of the package at summary judgment.  Plaintiff's conduct is certainly a factor that the court seriously considered, but the court, in looking at the overall background and history of this litigation, finds that this conduct does not change the court's overall reluctance to award attorneys' fees here.

Lastly, Plaintiff's conduct during the course of discovery evidences missteps litigating this case.  Plaintiff provided inadequate initial disclosures and did not conduct an adequate search for documents until late in discovery.  It appears that Plaintiff provided more than half of the responsive documents less than one month before the close of discovery and thereafter, supplemented its responses after the close of discovery.  (*See* Dkt. 135-4, Exs. W, X.)  Plaintiff's Rule 30(b)(6) witness also provided inaccurate information.  The inaccurate statements do not appear to have been made in bad faith, however.  Statements by Rule 30(b)(6) witnesses can be made in good faith and be inaccurate.  It appears that such was the case here.  The deficient disclosures, deficient production of documents, and withholding of arguably responsive documents, without adequate justification, are lamentable but do not make this case exceptional.  The court notes that, although not necessary for a finding of bad faith or unreasonable litigation conduct, there were no motions to compel or motions seeking sanctions brought in this action.

Based on the above, Plaintiff's litigation conduct is distinguishable from cases, on which Defendant relies, where courts have concluded that attorneys' fees were warranted for unreasonable litigation conduct or pattern of bad faith.  *See Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1308-09 (Fed. Cir. 2018) (affirming attorneys' fees where Plaintiff's conduct demonstrated a pattern of obfuscation and bad faith to "vexatiously multiply the proceedings and avoid early dismissal" by failing to produce evidence that would cure standing defect after multiple opportunities to cure); *Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1150 (N.D. Cal. 2017) (awarding fees where plaintiff demonstrated a pattern of "misrepresentation and disregard for factual accuracy," acted "evasively and disingenuously before the Court, including outright misstating the facts on numerous occasions," the claims were exceptionally meritless, and given the timing of the complaint, evidenced a possibility that "plaintiff brought th[e] action to suppress political

13

opposition"); *Cent. Mfg., Inc. v. Brett*, 492 F.3d 876, 884 (7th Cir. 2007) (affirming attorneys' fees where plaintiff filed infringement lawsuit with no evidence of sales to support claim to rights in mark, failed to produce documents requiring defendants to pursue numerous motions to compel, provided misleading testimony and failed to cooperate throughout discovery).  Plaintiff's conduct in this litigation approaches the line but does not cross it.

Accordingly, the court denies Defendant's motion for attorneys' fees under the Lanham Act.

### C. Fees under the Court's Inherent Authority

For the reasons discussed above, the court also does not find that circumstances presented in this case demonstrate misconduct which abuses the judicial process. *See Chambers*, 501 U.S. at 44-45.  The court denies the motion for attorneys' fees under the court's inherent authority.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

14

**IV. CONCLUSION**

For the reasons stated above, the court orders as follows:

(1) The court approves Defendant's voluntary dismissal of its counterclaims
    without prejudice.  (Dkt. 134-1.)

(2) The court approves the Proposed Judgment. (Dkt. 134-2.)

(3) The court denies Defendant's motion for attorneys' fees and nontaxable costs
    (Dkt. 135.)

(4) The court denies Plaintiff's Ex-parte Application (Dkt. 137.)

(5) The court grants Defendant's Motion to re-tax costs.  (Dkt. 166.)  Defendant's
    Application to the clerk to tax costs, dkt. 136, is timely.  The clerk's denial of
    Defendant's Application to Tax Costs is Reversed.  The clerk shall proceed to
    decide the Application on the Merits.

**IT IS SO ORDERED.**

Dated:    January 22, 2021

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE